Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| BANCO POPULAR DE PUERTO RICO<br><br>Recurrida<br><br>V.<br><br>WILLIAM AGOSTO MANSO, MARILYN FERNÁNDEZ MORALES, SOCIEDAD LEGAL DE GANANCIALES AGOSTO-FERNÁNDEZ Y OTROS<br><br>Peticionarios | TA2026CE00346 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV10818<br><br>Sobre: Ejecución de Hipoteca; Propiedad Residencial |
| --- | --- | --- |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de abril de 2026.

El 20 de marzo de 2026, compareció ante este Tribunal de Apelaciones, el señor William Agosto Manso y otros (en adelante, parte peticionaria), mediante recurso de *certiorari.* Por medio de este, nos solicita que revisemos la *Resolución Interlocutoria* emitida y notificada el 9 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Moción de Desestimación* presentada por la parte peticionaria.

Por los motivos que adelante se esbozan, se *deniega* la expedición del *certiorari.*

### I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* sobre ejecución de hipoteca presentada por el Banco Popular de Puerto Rico (en adelante, BPPR o parte recurrida), en contra de la parte peticionaria. Mediante la *Demanda,*

BPPR arguyó que la parte peticionaria emitió un pagaré hipotecario a favor de R&G Mortgage Corporation, o a su orden, por la suma principal de $206,755.00 con intereses a razón del 6.50% anual, a vencer el 1ro de octubre de 2034, más honorarios de abogados pactados a un 10% del principal, mediante escritura otorgada el 1ro de octubre de 2004. Posteriormente, dicha escritura fue modificada a un nuevo principal de $269,518.52, mediante escritura otorgada ante notario el 27 de diciembre de 2011. Mencionó, además, que la parte peticionaria constituyó una hipoteca sobre un bien inmueble[1] descrito como sigue:

> ---RÚSTICA: Parcela de terreno radicada en los Barrios Puente y Sabana Llana de Río Piedras, compuesta de 2,985.935 metros cuadrados, equivalentes a .759 milésimas de una cuerda; en lindes por el Norte, con la servidumbre Sur de la Calle #5 de la Urbanización La Experimental, en rumbos diferentes y con una distancia de 35.752 metros lineales; por el Sur, con terrenos propiedad de Blas Valcárcel, en rumbos diferentes y con una distancia de 47.51 metros lineales; por el Este, con terrenos propiedad de Claudina Adorno, en rumbos diferentes y con una distancia de 64.267 metros lineales; y por el Oeste, con terrenos propiedad de la Sucesión Pérez Meléndez, en rumbos diferentes, con una distancia de 74.375 metros lineales y con terrenos propiedad de la Sucesión de José Torres Montañés, en una distancia de 11.563 metros lineales.------------------

> ---Enclava una casa en hormigón de una sola planta para fines residenciales, de una sola familia.-------------

> ---Inscrito al folio 23 del tomo 604 de Sabana Llana, finca número #24,548 Registro de la Propiedad de Puerto Rico, Sección Quinta de San Juan.----------------

De igual manera, BPPR alegó ser la parte sucesora del derecho y/o la tenedora por valor recibido y de buena fe del pagaré. Añadió que, la parte peticionaria incumplió con la deuda al dejar de pagarla, a pesar de múltiples avisos y oportunidades concedidas por el BPPR. Por lo cual, declaró la totalidad de la deuda vencida, líquida y exigible. Adujo que, la parte peticionaria, al momento de la presentación de la demanda, adeudaba las siguientes sumas:

---

[1] Dicho inmueble constituía la vivienda principal de la parte peticionaria.

$257,697.43 por concepto principal, generando intereses a razón de 4.00% desde el 1ro de junio de 2014; cargos por demora que continuaban acumulándose hasta el saldo total de la deuda, y $29,951.85 en concepto de costas, gastos y honorarios de abogado. Finalmente, le solicitó al foro *a quo* declarar la deuda vencida, líquida y exigible, y ordenar la ejecución y venta en pública subasta del inmueble garantizado hipotecariamente y objeto de la causa de acción de epígrafe.

Más adelante, BPPR presentó *Moción en Cumplimiento del Artículo 3 de la Ley 268 de 2018 y en Solicitud de Señalamiento de Mediación.* Mediante la aludida moción, solicitó al foro *a quo* referir el caso al proceso de mediación compulsoria, conforme al Art. 3 de la Ley Núm. 268 de 2018.

Posteriormente, el foro de primera instancia emitió *Resolución,* donde expresó que el caso de epígrafe se refirió al Centro de Mediación de Conflictos. Según surge de la resolución, en virtud de las disposiciones de la Ley Núm. 184 de 17 de agosto de 2012, según enmendada, el foro primario quedó privado de jurisdicción para atender el caso y disponer de este en sus méritos. Por tanto, paralizó los procedimientos hasta tanto dispusiera otra cosa.

El 3 de junio de 2025, el Centro de Mediación de Conflictos presentó *Moción sobre el Resultado de Mediación.* Indicó que, en el proceso de mediación surgió información entre las partes sobre discrepancias en las mensualidades atrasadas y la deuda del préstamo hipotecario. Mencionó que, en el caso de *Oriental Bank v. Caballero García,* 212 DPR 671 (2023), el Tribunal Supremo resolvió que, en las instancias en las que surja una controversia sobre la liquidez de la deuda en un caso de cobro de dinero y ejecución de hipoteca, el foro de primera instancia la deberá resolver previo a referir el asunto al procedimiento de mediación compulsoria, cuando este aplique. Asimismo, añadió que, el foro más alto dispuso

que, si un caso es devuelto al foro *a quo* por surgir una controversia de derecho que impidió la efectiva realización del procedimiento de mediación conforme lo establece la Ley Núm. 184-2012, según enmendada, el Tribunal deberá resolverla de acuerdo al derecho aplicable, para asegurar que el procedimiento de mediación compulsoria sea efectivo.

A tales efectos, y en vista de la existencia de la controversia sobre discrepancias en las mensualidades atrasadas y la deuda del préstamo hipotecario, el Centro de Mediación de Conflicto decidió devolver el caso al Tribunal de Primera Instancia para que atendiera dicha controversia. Asimismo, apercibió que, nada impedía que luego de atenderse la controversia el caso volviera a ser referido al proceso de mediación.

Más adelante, fue celebrada una vista con el propósito de atender la alegada controversia. Posterior a la celebración de la vista, el foro primario, mediante *Orden*, le ordenó a las partes y al Centro de Mediación de Conflictos continuar la mediación compulsoria.

El 9 de noviembre de 2025, la parte peticionaria presentó *Moción de Desestimación*. Conforme surge de la aludida moción, el 8 de octubre de 2025, se llevó a cabo la vista de mediación. Indicó que, en la vista, se acordó que BPPR iba a entrevistar vía telefónica a la parte peticionaria, con el propósito de indagar sobre el estatus financiero de esta. No obstante, la entrevista no se llevó a cabo. Según adujo la parte peticionaria, envió varios correos electrónicos con el propósito de que se le atendiera y se llevara a cabo la entrevista, pero estos fueron infructuosos. Alegó que, el hecho de que no se llevara a cabo la entrevista constituía un acto de mala fe de la parte recurrida. Añadió que, tal acto delataba su incumplimiento con el deber de ofrecer todas las alternativas de mitigación de pérdidas exigidas en la Ley Núm. 184-2012, según

enmendada. Por lo anterior, solicitó al foro primario la desestimación de la *Demanda*.

En respuesta, la parte recurrida, el 16 de diciembre de 2026, presentó *Oposición a Moción de Desestimación*. En virtud de esta, le solicitó al foro *a quo* rechazar de plano la solicitud de desestimación, ya que esta fue presentada mientras el caso se encontraba ante el Centro de Mediación de Conflicto, conforme a lo dispuesto en la Ley Núm. 84-2012. De acuerdo a lo anterior, arguyó que, el foro *a quo* carecía de jurisdicción para atender la moción de desestimación. Aseguró, además, estar participando activamente del proceso de mediación y que le continuaba brindando a la parte peticionaria todas las alternativas disponibles. Asimismo, afirmó que se encontraba cumpliendo con lo dispuesto por ley, con el fin de llevar a su cabalidad el proceso de mediación y poder ofrecerle las alternativas correspondientes a la parte peticionaria. A su juicio, la moción de desestimación fue presentada a destiempo, y el foro primario debía esperar la conclusión de la mitigación compulsoria para evaluar si el BPPR le brindó todas las alternativas disponibles a la parte peticionaria.

Consecuentemente, el Tribunal de Primera Instancia, el 9 de enero de 2026, emitió la *Resolución Interlocutoria* cuya revisión nos atiene, en la cual dispuso:

> ESTANDO EL CASO PENDIENTE DE QUE CULMINE EL PROCESO DE MEDIACIÓN COMPULSORIA, A LA SOLICITUD DE DESESTIMACIÓN PRESENTADA POR LA PARTE DEMANDADA, **NO HA LUGAR**.

El 16 de enero de 2026, la parte peticionaria presentó *Reconsideración por Incumplimiento Jurisdiccional y Mala Fe del Acreedor*. Arguyó que, procedía la desestimación de la causa de acción por alegada violación reiterada de la parte recurrida con los requisitos jurisdiccionales establecidos por la Ley Núm. 184-2012, según enmendada.

El foro primario, mediante Orden emitida el 21 de enero de 2026, le concedió a la parte recurrida 20 días para que expresara su posición en torno a la moción presentada.

En cumplimiento con lo ordenado, la parte recurrida presentó el 3 de febrero de 2026, *Moción en Cumplimiento de Orden y Oposición a Moción de Desestimación.* Reiteró que, la moción de desestimación fue presentada fuera de tiempo, ya que, el caso se encontraba ante el Centro de Mediación de Conflictos. Además, negó las imputaciones realizadas por la parte peticionaria. Nuevamente se opuso a la *Moción de Desestimación.*

Finalmente, el Tribunal de Primera Instancia, el 17 de febrero de 2026, dictó la siguiente Orden:

> A LA MOCIÓN DE RECONSIDERACIÓN, **NO HA LUGAR**.

> SOMÉTANSE LAS PARTES AL PROCESO DE MEDIACIÓN PROCURANDO LA PARTICIPACIÓN DE LA REPRESENTACIÓN LEGAL DEL DEMANDADO.

El 5 de marzo de 2026, el Centro de Mediación de Conflictos presentó *Moción sobre el Resultado de Mediación.* En esencia, informó que, las partes consistentemente presentaron discrepancias sobre el cumplimiento de la entrega de documentos para completar la evaluación financiera. Como consecuencia, no hubo progreso en el caso desde que fue referido el 18 de junio de 2025 para continuar con la mediación. Ante la existencia de discrepancias, el Centro de Mediación de Conflictos dio por concluida su intervención, para dar paso al trámite judicial correspondiente.

El foro *a quo* el 9 de marzo de 2026, emitió la siguiente determinación:

> RECIBIDA LA NOTIFICACIÓN SOBRE EL RESULTDO DEL PROCESO DE MEDIACIÓN Y DEVUELTO EL CASO AL FORO JUDICIAL, SE DEJA SIN EFECTO PARALIZACIÓN DECRETADA Y NOTIFICACIONES AL CENTRO DE MEDIACIÓN DE CONFLICTOS.

> FIJEN LAS PARTES CURSO A SEGUIR EN 15 DÍAS.

Aún inconforme con la denegatoria de la desestimación, la parte peticionaria acudió ante este foro revisor mediante el recurso de *certiorari* de epígrafe, en la cual esbozó los siguientes señalamientos de error:

**Primer error:** Erró y abusó de su discreción el foro de instancia al compeler a las partes del caso de epígrafe a someterse a un proceso de mediación compulsoria viciado, que es meramente pro forma y no busca realmente proveer a la parte recurrente todas las alternativas de mitigación de pérdidas.

**Segundo error:** Erró y abusó de su discreción el foro de instancia al no desestimar este caso, cuando la parte recurrente dio cuenta de los hechos y circunstancias que incentivan dicha desestimación.

El 1ro de abril de 2026, compareció la parte recurrida mediante *Oposición a Expedición de Petición de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

## A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[2]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones[3], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". (citas omitidas) *Torres*

---

[2] Véase también, *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

[3] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. __, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf

*Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848.  La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[4]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

---

[4] *Íd.*

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Ley Núm. 184-2012

Con miras a auscultar alternativas para disminuir los procesos de ejecución de hipotecas y evitar al máximo posible que las personas continúen perdiendo sus propiedades principales de vivienda, el 17 de agosto de 2012, se aprobó la Ley Núm. 184-2012, 32 LPRA secs. 2881-2996, según enmendada, intitulada como la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal". *Franklin Credit v. George Riviello*, 209 DPR 555, 563 (2022); *Oriental Bank v. Caballero García*, 212 DPR 671, 680 (2023). Dicho estatuto establece un proceso de mediación compulsoria, ante los tribunales de Puerto Rico o ante los foros administrativos correspondientes, previo a llevar un proceso de ejecución de hipoteca (*foreclousure*) de cualquier propiedad principal de vivienda en Puerto Rico por

cualquier entidad bancaria.[5] *Oriental Bank v. Caballero García*, supra, págs. 680-681.

Según la Exposición de Motivos del aludido estatuto, la propiedad principal de vivienda es "aquella que se usa como principal, no (second home), y que para fines de contribuciones sobre bienes inmuebles es la primera residencia o aquella que gozaría de aplicar en cada caso de una exención contributiva". Exposición de Motivos de la Ley Núm. 184-2012, 2012 LPR 184; *Franklin Credit v. George Riviello*, supra, pág. 564.

El Artículo 2 de la Ley para Mediación Compulsoria, según enmendada, 32 LPRA sec. 2881, provee la siguiente definición:

> [. . .]
>
> (b) Mediación Compulsoria: En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación […] presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. **En dicha reunión el acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal**. El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal.  32 LPRA sec. 2881 (énfasis nuestro); *Banco Santander v. Correa García*, 196 DPR 452, 462-463 (2016).

Según se puede observar, el objetivo de la mediación compulsoria es que se logre llegar a un acuerdo que le permita al deudor hipotecario disponer de un acuerdo de pago o alguna otra alternativa que satisfaga a las partes, con el propósito de no perder su vivienda principal. *Franklin Credit v. George Riviello,* supra, pág. 564.

---

[5] Véase, Exposición de Motivos de la Ley Núm. 184-2012.

El proceso para llevar a cabo la "mediación compulsoria" se encuentra regulado por el Artículo 3 de la Ley para Mediación Compulsoria, según enmendada, de la siguiente forma:

Artículo 3.- El deudor tendrá derecho a un procedimiento de mediación en la acción civil que se le presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya su vivienda principal. Será deber del Tribunal, dentro de un término de treinta (30) días contados a partir del diligenciamiento del emplazamiento, citar a las partes a una vista o acto de mediación compulsoria que presidirá un mediador. 32 LPRA sec. 2882.

A su vez, la Ley 184-2012, según enmendada, establece que el proceso de mediación compulsoria "será un requisito jurisdiccional … sin cuyo cumplimiento no podrá dictarse sentencia o celebrarse la venta judicial de la propiedad gravada con la hipoteca cuya ejecución se solicita". *Íd.*; *Oriental Bank v. Caballero García*, supra, pág. 681. Es por lo que, el tribunal tendrá la obligación de referir el caso a mediación compulsoria en todos los casos donde se "presente para la ejecución de la hipoteca sobre la propiedad residencial que constituya [la] vivienda principal [del deudor]". Ley 184-2012, según enmendada, *supra.* Ver también *Franklin Credit v. George Riviello*, supra. pág. 565, citando a *Banco Santander v. Correa García*, supra.[6]

El Tribunal Supremo ha interpretado que, en las instancias en las que no se cumpla con el requisito jurisdiccional de la mediación compulsoria en los casos que aplique, no podrá dictarse Sentencia ni ordenarse la venta judicial del inmueble que se utilizar como residencia principal. *Franklin Credit v. George Riviello*, supra. pág. 565.

La Máxima Curia destaca que, todas las enmiendas que se le han realizado a esta ley, han sido dirigidas a velar por que *se cumpla*

---

[6] Aunque dicha jurisprudencia interpreta una versión previa de la ley, igual aplica con vigor la conclusión en cuanto a la obligatoriedad de la mediación compulsoria. La Ley Núm. 73-2022 eliminó las excepciones de cuando un deudor estuviera en rebeldía o se le hubieran eliminado las alegaciones a las cuales hacen referencia los citados casos.

*la política pública de que las familias no se queden sin hogar. Franklin Credit v. George Riviello,* pág. 566. Es decir, se han llevado a cabo múltiples esfuerzos conducentes a que se proteja la residencia o vivienda principal. *Íd.* Tal es el caso de las enmiendas más recientes, introducidas mediante la Ley Núm. 73-2022. Allí, el legislador expresó que las enmiendas introducidas buscan fortalecer "el derecho reconocido al deudor hipotecario que interesa explorar alternativas para evitar la pérdida de su vivienda principal". Ver Exposición de Motivos, Ley Núm. 73-2022.

Consecuentemente, todo lo antes dispuesto indica que la protección de la Ley Núm. 184-2012, según enmendada, opera con el fin de salvaguardar la residencia o vivienda principal.

Esbozado el derecho que enmarca la controversia de epígrafe, procedemos a aplicarlo.

**III**

La parte peticionaria nos solicita que revisemos la *Resolución Interlocutoria* emitida y notificada el 9 de enero de 2025, por el Tribunal de Primera Instancia. En virtud de esta, el foro primario declaró No Ha Lugar la *Moción de Desestimación* presentada por la parte peticionaria.

En su primer señalamiento de error, la parte peticionaria sostiene que, el foro de primera instancia incidió al compeler a las partes de epígrafe a someterse a un proceso de mediación compulsoria que, a su juicio, fue viciado y pro forma, que no busca realmente proveer a la parte peticionaria todas las alternativas de mitigación de pérdidas.

Como segundo señalamiento de error, la parte peticionaria arguye que, el foro *a quo* erró y abusó de su discreción al no desestimar la causa de acción de epígrafe, cuando esta dio cuenta de los hechos y circunstancias que incentivan dicha desestimación.

Tras evaluar detenidamente el recurso de epígrafe y luego de una revisión, colegimos que, no procede la expedición del auto solicitado. Los señalamientos de error antes reseñados, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional de autos. La decisión recurrida no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

Por otro lado, la parte peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

**IV**

Por los fundamentos que anteceden, se *deniega* la expedición del recurso de *Certiorari*.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.  El Juez Pagán Ocasio concurre sin escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones